Argued August 20, affirmed September 10, 1975

ERB ET AL, *Appellants, v.* COMMON COUNCIL
OF THE CITY OF EUGENE ET AL (No. 74 4202),
*Respondents.*
539 P2d 1125

*Larry R. Roloff,* Eugene, argued the cause and filed the brief for appellants.

*John E. Frohnmayer,* Assistant City Attorney, Eugene, argued the cause for respondents. With him on the brief were Johnson, Johnson & Harrang, Eugene.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

This appeal is from a ruling against petitioners on a writ which was issued to review a Eugene City Council zoning change. ORS 34.010 et seq.

Eugene city ordinances authorize the city planning commission to have public hearings and to make decisions in zoning matters, and provide that appeals may be taken to the city council from planning commission determinations. The ordinances also provide for public hearings before both bodies and for mailed notices thereof to interested parties. In the case at bar the petition for the writ alleges that Covenant Presbyterian Church and Tomlinsons made a joint application for a planned unit development on a 3.5-acre tract in the city of Eugene. It alleges that the petitioners are property owners nearby and adverse parties. Also, Tomlinsons have an option to purchase

from the church 1.65 acres of the total of 3.5 acres included in the tract and they will develop housing for elderly and handicapped people on the 1.65 acres of property and the same "will be severed from the total land area * * *." There are 24 units contemplated. The petition sets out certain sections of Eugene zoning ordinances and claims that the city council failed to follow them with respect to notices concerning the hearings and to the density of dwelling units that can be built upon a planned unit development tract under four acres in size. Further, it is contended that the findings made by the city council are not supported by substantial evidence in the record.

The record shows that the first joint application for the planned unit development came to the planning commission on December 4, 1973. Thereafter, a second application was made on March 1, 1974 and a third on May 15, 1974. These successive applications were to initiate pre-preliminary and preliminary procedures for the planning commission staff. A change occurred as to one of the joint signers of the application. First, that applicant was Presbyterian Action for Development, which changed to Covenant Presbyterian Church; the latter owns the entire tract and has located thereon its preexisting church building.

■ The planning commission held a "preliminary" hearing on June 18, 1974 to consider the planned unit development. It approved the plan and on June 28, 1974 a number of surrounding property owners appealed from the decision. None of them was the appellant herein. The city council set July 8, 1974 as the time for hearing the appeal but moved it over to July 22, 1974 upon a written request from a number of property owners in the area, including the petitioners. At the regular council meeting on July 8, the applicants asked for an earlier hearing because they were having difficulty holding their financing for the

project. The council changed the hearing date to July 15 and the minutes show they directed "immediate" telephone notice. Pursuant to this, notification of the change of date was given by telephone on July 9, 1974 to all of the interested parties, including these petitioners. Letters with the same information were dated and presumably mailed to the same parties on July 10. The petitioners and numerous other property owners appeared at the July 15 council meeting where the decision here being reviewed was made. Section 9.780 of the ordinance of the city of Eugene states that " 'not less than five days prior to the date set for the. hearing' " written notice of the time and place of the hearing shall be given to any known adverse parties.

The petitioners had written notice of the July 8 meeting which was postponed to July 22. Then they had a written notice which the city says was mailed on July 10, but which petitioner Erb stated at the council meeting was postmarked July 11, prior to the July 15 meeting. The record being reviewed does not have anything except a notation in the minutes that Mr. Erb said the postmark date was July 11. The record made by the secretary whose duty it was to give the notices shows that they were dated July 10. In *Lewis & Clark College v. Commission,* 3 OTR 169, 171 (1968), it was held:

"\* \* \* The general statute regarding service by mail, ORS 16.790, provides that the 'service shall be deemed to be made on the day of the deposit in the post office, and not otherwise.' \* \* \*

"\* \* \* [I]t is clear that the [order] \* \* \* started to run from the date the commission's order was mailed."

In *Stroh v. SAIF,* 261 Or 117, 119, 492 P2d 472 (1972), it is said:

"\* \* \* [S]tatutes commonly provide for no-

tification by mail and where this is the case the deposit of the notification in the mails satisfies the requirement * * *."

The record shows to our satisfaction, and obviously to the city council's satisfaction, that these petitioners had the notice required by the ordinance and besides they had telephone notice of the change of date on July 9. They did appear and stated their opposition to the development. The requirements of notice were more than adequately met.

The zoning ordinances of Eugene allow planned unit developments under detailed circumstances. Provisions for planned unit developments have been included in many zoning ordinances because they present a method of achieving flexibility, and in unique situations provide desirable living environments not possible through strict application of various zoning requirements. They encourage developers to use creative approaches to the development of land, encourage efficient and desirable use of open land and encourage variety in the physical development pattern of a city. *See Frankland v. City of Lake Oswego*, 267 Or 452, 462, 517 P2d 1042 (1973).

■ Section 9.512(1) of the Eugene ordinance provides that such developments located in R-1 or RA zones shall include not less than four acres of contiguous land unless the planning commission or the city council finds that less than a four-acre tract is suitable by virtue of " 'unique historical character, topography, or other natural features, or by virtue of its qualifying as an isolated problem area.' " Section 9.514(1) states that land included in a proposed planned unit development must be in " 'one ownership or control or the subject of a joint application by the owners of all the property included. The holder of a written option to purchase * * * shall be deemed the owner * * *.' " Another section of the ordi-

nance requires that the density of units in this type of planned unit development (under four acres) shall not be more than eight to one acre. If the 24 units that are to be developed are divided into 3.5 acres, the density requirement is met. If it is divided into the 1.65 acres upon which Tomlinsons have an option, the density is exceeded.

Our review of the record shows that evidence before the planning commission and the city council supports the actual written finding of the council that the 3.5-acre tract by reason of its topography, and natural features is an isolated problem area is supported by reliable, probative and substantial evidence in the record. ORS 34.040(3). From the beginning various staff reports have included statements like the following from the staff notes presented to the planning commission on June 18, 1974:

> "The proposed development location offers unusual merit for its projected use. The site benefits from its position next to a public park and its nearness to a church. Good streets and walks are available and public transit offers service virtually at the threshold. Commercial facilities are available within walking distance.

> "Obviously, there will be no demand made upon public schools. University facilities, and hospitals, would be within reach, however. Similarly, the new Amazon Community Center would be available to those desiring to utilize it.

> "The location, in summation, appears to be an unusually apt one for this kind of development."

The objectors and those who supported the project before the commission and council repeatedly pointed out, according to the meeting minutes in the record, that the tract is an isolated problem area because a city park ends at one end of its boundary and two streets project to it but do not go through it.

The parking lot which the church presently has is unsupervised and poorly lighted. The isolated character of the area and these other factors have brought about vandalism and other undesirable activities. The development unit would occupy the area and would result in supervision of it by a full-time manager. There is more in the record that can be described as substantial evidence in support of the council's decision but we have reviewed sufficient of it here to demonstrate that objections in this regard are without validity.

■ Under the same heading the petitioners assert that the 1.65-acre tract under option to Tomlinsons will be "severed" from the balance, thus bringing the density over the minimum requirement of the ordinances. The only substantial support we find in the record for this statement is found in the staff notes presented to the Eugene Planning Commission on June 18, 1974:

> "* * * Early in May of 1974, an instrument was executed to eventually sever the eastern portion of the site from the church proper and give it to Mr. and Mrs. Tomlinson on a purchase-option agreement * * *."

The next page of the same report, however, contains a statement that "[t]he development proposal consists of a Presbyterian Church-*controlled* site of about 3.5 acres to house 24 dwelling units—some 6.84 dwelling units per acre * * *." (Emphasis supplied.)

This objection was the one voiced more than any other by opponents before both commission and council. A proviso in the commission's approval was:

> "A mutual ownership agreement must be established to ensure effective, long-range maintenance

and attention to the entire planned unit development."

The council found:

"The entire property is to be developed as a single unit * * * the owner-developers will be parties to and bound by appropriate contracts that will require that the development, and each unit and tract thereof, will be used and maintained in strict conformance with the approved * * * plan."

A copy of such a contract, executed by the Church and Tomlinsons and filed with the clerk on August 7, 1974, is included in the record. The petition for writ of review was filed in circuit court on August 28, 1974.

From the foregoing, it is obvious that there is no real substantiation for petitioners' statement that the 1.65-acre portion will be severed from the unit. We find reliable, probative and substantial evidence in the record to support all questioned findings.

Affirmed.